Neal K. Ostler
6380 N. Silver Sage Dr.
Park City, Utah 84098
day phone: 435-649-7152
Plaintiff "pro se"

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

AUG 16 2004

MARKUS B. ZIMMER, CLERK
BY _____
DEPUTY CLERK

RECEIVED CLERK

JUL - 9 2004

U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| NEAL K. OSTLER,<br>Plaintiff, pro se<br><br>vs.<br><br>SALT LAKE CITY CORPORATION, and in their individual and official capacity; Mayor Rocky Anderson and city employees Rick Graham, Kevin Bergstrom, Debbie Lyons, and Wendee Packwood, SALT LAKE COMMUNITY COLLEGE, UTAH DEPT OF PUBLIC SAFETY, UTAH ATTORNEY GENERAL, LABOR COMMISSION OF UTAH, and Twenty-five John Doe Individuals in Their Official and Individual Capacity,<br>   et al, Defendants. | NOTICE OF APPEARANCE<br>and<br>COMPLAINT<br>and<br>REQUEST FOR JURY HEARING<br><br>Judge Ted Stewart<br>DECK TYPE: Civil<br>DATE STAMP: 08/16/2004 @ 14:24:50<br>CASE NUMBER: 2:04CV00627  TS |

STATE OF UTAH        )
                     : ss.
COUNTY OF SALT LAKE  )

Now comes Neal Ostler and provides this notice of appearance on his own behalf as a "pro se" plaintiff in this matter and files this complaint.

Mr. Ostler was employed with Salt Lake City Corporation between November of 2003 and February of 2004 and we terminated because of the subjective reason that there was not a "good fit" between himself and The City and he alleges that it occurred, instead, out of "Retaliation."

## I. INTRODUCTION

1. This is an action based upon blacklisting, wrongful termination, retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C., of the Age Discrimination in Employment Act, and

1

4

of The Utah Protection of Public Employees Act.

2. Hereinafter the individual defendants will collectively be called the "Defendants" unless otherwise specified and Salt Lake City Corporation shall be abbreviated as SLCC or The City.

2. Plaintiff resides in Summit County, State of Utah, where he has maintained his principle residence since August of 1996, and at all times herein mentioned was a resident of Utah.

3. Defendant S LCC is now, and at all times mentioned, is a municipality of the State of Utah incorporated as a City within Salt Lake County.

4. Defendants at all times pertinent to this complaint were acting under the color of their office, custom, and usage as employees of SLCC, State of Utah, and in their individual capacity..

## II. FACTUAL AND PROCEDURAL CONTEXT

5. Mr. Ostler has been engaged in both administrative and judicial efforts to assert his rights as a citizen since early 1990. These efforts have involved a variety of lawsuits filed in 3rd District Court as well as in the U.S. Court for Utah and a "List of Legal Actions" included herein as **Exhibit #1.**

6. In the Spring of 1999, Mr. Ostler applied for the position of Police Officer with The City and because he didn't make the hiring roster, despite approximately twenty-seven accumulative years in law enforcement, he subsequently filed an appeal with the City. Mr. Ostler was not successful with that appeal of what he believed to be a fault in the City's hiring process and he believed that he was also treated unfairly because of the above history of litigation within the same realm of public safety and law enforcement circles in Utah.

7. In late September of 2003, Mr. Ostler applied for a position with SLCC entitled Safety Coordinator within their Department of Public Services. Mr. Ostler was found to be qualified and, after interviewing, was offered the position and started work on November 3rd, 2003.

8. Concurrent with the above recruitment process but aside from it, Mr. Ostler was involved in filing charges with the Equal Employment Opportunity Commission at their office in Phoenix,

Arizona. Those charges involve his claims of violation of the Age Discrimination in Employment Act by several agencies and departments of the State of Utah. Despite that this was Mr. Ostler's 4th complete and discrete round of frustrated efforts to obtain an equal employment opportunity his case was assigned #350-2004-01453 and he was afforded a Right To Sue letter attached as **Exhibit #2**.

9. During the term of his employment Mr. Ostler admirably performed the tasks and duties stipulated in his job description. Mr. Ostler was not a member of a "team" or "committee" of persons who were to accomplish a job function but operated as an independent individual under the supervision of Debbie Lyons with whom he had regular one-on-one meetings to set short term and long term goals to focus his efforts and energies and to evaluate and assess his progress. A copy of the job opening announcement that includes the job description is attached herein as **Exhibit #3.**

10. Mr. Ostler made extra efforts to connect with and build positive relationships with those whom he worked with in the Administrative Office for the Dept of Public Services and are outlined in his affidavit attached herein as **Exhibit #4.**

11. At no time was there any assessment of Mr. Ostler's ability to "fit in" nor was he given any feedback from anyone, let alone his supervisor, with regard to his interpersonal skills with other people in the administrative offices.

12. On 5 February, 2004, Mr. Ostler was given verbal notice of his termination by his supervisor, Debbie Lyons. Ms. Lyons then escorted him to his work station, remained to observe while he packed up his personal things and turned in City property that had been issued to him, and then escorted him immediately from the administrative offices. Mr. Ostler would describe the event as having been thrown out but was afforded an opportunity to briefly shake the hands and bid adieu to his fellow workers before leaving the building.

13. The next day, February 6th, Mr. Ostler delivered an "Appeal" to (1) his Department Director, Rick Graham, (2) the office of Rocky Anderson, Mayor of SLCC, (3) to the Office of The City

Attorney and to (4) Wendee Packwood, his Department Human Resource person.. In this document Mr. Ostler requested to have the matter of his termination reviewed by the City's appropriate employee review committee. A copy is attached as **Exhibit #5.**

14. Mr. Ostler was sent written letter from Rick Graham that he was to be denied that resource which was only available to career status employees. See: **Exhibit #6.**

15. Mr. Ostler then delivered his "Notice of Claim" to SLCC to appropriate persons on or about the 12th of February, 2004, establishing a 90 day period for the City to respond to his claims of having been terminated by reason of "Retaliation" and asking for reinstatement or payment of damages resulting from the unlawful termination. See: **Exhibit #7.**

16. Concurrent with the above activity, Mr. Ostler began the process of filing charges of "Retaliation" with the EEOC that also named several Utah agencies and departments as perpetrators an co-participants in the retaliation. The case against SLCC was assigned #350-2004-02248 and on or about the 22nd of April, 2004, Mr. Ostler received his "Right To Sue" letter from the EEOC. See **Exhibit #8.**

17. Mr. Ostler felt that his fellow workers at SLCC deserved an explanation of what was going on and he wrote a several page letter to them that later became the substance of an affidavit that he included as an attachment to the EEOC charges described in paragraph 16., above, and included here as **Exhibit #9.**.

18. Mr. Ostler has filed complaint in the U.S. Court for Utah on Case # 2:04-CV-0435 naming several Utah Departments and pertinent employees in the official and individual capacities as Defendants. These defendants include the Departments of Public Safety, Commerce, Health, Human Resources, the Labor Commission of Utah.

19. On or about the 22nd of May, 2004, Mr. Ostler received a letter from SLCC advising that the City was officially denying his claims. See: **Exhibit #10.**

4

## III. FIRST CAUSE OF ACTION
## BLACKLISTING

20. Paragraphs 1. thru 19., above, are incorporated herein by reference.

21. The Utah Code makes blacklisting a violation of the law, i.e.,:

> **34-24-1. Blacklisting employees prohibited.** No person shall blacklist or publish, or cause to be published or blacklisted, any employee discharged or voluntarily leaving the service of any person, company or corporation with intent and for the purpose of preventing such employee from engaging in or securing similar or other employment from any other person, company or corporation.
>
> **34-24-2. Violation -- Penalty.** "... such person is guilty of a felony and shall be fined not less than $55 nor more than $1000 and imprisoned in the state prison not less than sixty days nor more than one year.

22. Mr. Ostler asserts that through the process of discovery he will be able to produce substantial evidence to demonstrate that individuals acting in their official and individual capacity did blacklist Mr. Ostler by causing him to be discharged by SLCC with the purpose of preventing him from engaging in similar employment and did conspire through correspondence or otherwise to prevent him from securing employment.

23. Such persons are guilty of a felony and Mr. Ostler alleges that proof these actions were taken with complete disregard for his need to be self-reliant in financially supporting himself and his family will be shown through the discovery process and that such proof will be adequate to demonstrate, by reason that they are criminal in nature, to show that they were taken with malice aforethought. .

## IV. PLAINTIFF'S 2ND CAUSE OF ACTION
## DEFAMATION OF CHARACTER

24. Paragraphs 1. thru 23., above, are incorporated herein by reference.

25. Defamation of Character is a violation of Mr. Ostler's rights as a citizen and such actions undertaken by employees of SLCC and shared amongst them and similar employees in other Utah departments and agencies is contrary to both Utah and Federal Law and comprise a false statement that injures someone's reputation and exposes him to public contempt, hatred, ridicule or condemnation.. Defamation is a tort or a civil wrong that entitles the injured party to compensation if he can prove that the statement damaged his reputation.

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" ***Dominguez v. Stone***, 638 P.2d 423, 425 (N.M. Ct. App. 1981) (quoting Restatement (Second) of Torts §§ 559 (1976)).

26. Mr. Ostler alleges that, while under color of state law, Defendants did engage in communication that injured reputation and exposed him to contempt and done so without regard to whether or not the statements were true yet should have known by their sensitive nature that even if they were true they would be damaging to Mr. Ostler's reputation. Even if persons are merely passing along information given to them by another they are liable in the same fashion as if they had been the originator of the statements.

27. Mr. Ostler asserts that the information is not true and intends to produce evidence to support this contention through discovery. Undoubtedly defendants are going to assert that they are exempt conditionally with the rebuttable argument they were merely acting in good faith in providing information about Mr. Ostler's job performance, professional conduct, or former emloyer evaluations. However, Mr. Ostler asserts that these presumptions of good faith are a ruse and that no such details exist in Mr. Ostler's official employee records and he will be able to show the difference between spreading rumor and innuendo and privileged employee history through the process of discovery.

28. Individuals are conditionally exempt but not when they act in a manner that is clearly contrary to good human resource practices and not when done contrary to Utah and Federal laws. Individual defendants acted with malice and with clear intention to transfer false information.

## V. PLAINTIFF'S 3RD CAUSE OF ACTION
## RETALIATION

29. Paragraphs 1 thru 28 are incorporated herein by reference.

30. "Retaliation" refers to discrimination against an individual because that individual has engaged in activities protected by Title VII of the Civil Rights Act of 1964 , including: (i) opposing employment practices that the individual reasonably believes are discriminatory or retaliatory; (ii) filing an employment discrimination charge or complaint with the Equal Employment Opportunity Commission ("EEOC"), or (iii) participating in or cooperating with the investigation or litigation of

any such employment discrimination charge or complaint

31. Termination of employment for reasons of Retaliation is a violation of the law and Mr. Ostler asserts that through the process of discovery he will be able to produce adequate proof that he was terminated for such reason and not because he "did not fit in" as alleged by SLCC and that a requirement to "fit in" is not within his job description and not a legitimate cause for termination.

32. Mr. Ostler asserts that he will be able to show; (1) that the adverse action of termination was motivated by bad faith, (2) that there was a causal connection by the temporal proximity of when it occurred, (3) that he was engaged in a protected activity of asserting his legal right to be afforded equal opportunity in employment, equal protection of the law, and his right to not be discriminated against because of age in accord with the Age Discrimination in Employment Act (ADEA) when he lost his employment with SLCC, and (4) that the reason given him of not "fitting in" with The City was a mere pretext when the actual reasons were from the wrongful motive of retaliation..

33. Retaliation can be separately charged as a violation of the ADEA.

## VI. PLAINTIFF'S 4TH CAUSE OF ACTION
## VIOLATION OF UTAH'S PROTECTION of PUBLIC EMPLOYEE'S ACT

34. Paragraphs 1 thru 33 are incorporated herein by reference.

35. It is a violation of Utah Code 67-20-23 (2); "An employer may not take adverse action against an employee because an employee participates or gives information in an investigation, hearing, court proceeding, legislative or other inquiry, or other form of administrative review held by the public body

36. Mr. Ostler herein alleges that he can discover evidence to support his allegations that all of the elements comprising violation of UPPEA will be supported and that he will be able to prove that his employment was lost contrary to this law and not because he failed to "fit in" at SLCC.

37. Mr. Ostler will ask for punitive and compensatory damages consistent with the UPPEA and those allowed for violation of protection from retaliation under Title VII..

## VII. PLAINTIFF'S FIFTH CAUSE OF ACTION:
## VIOLATION OF PUBLIC POLICY OF GOOD FAITH AND FAIR DEALING

38, Paragraphs 1. thru 37. are incorporated herein by reference.

39. The Defendant's are probably going to argue that Mr. Ostler had no right to expect that his employment was to become permanent because he was still on probation. Mr. Ostler admits that Salt Lake City policy & procedures provide that during the first six months of employment an employee can be terminated. However, Mr. Ostler asserts that Salt Lake City is not an "at will" employee and that the public policy of "Good Faith and Fair Dealing" is applicable even to an employee who is yet on probation and that a public employer must still have good cause and justifiable reasons for terminating an employee even while on probation.

40. Allegations of retaliation can be met either by direct evidence of retaliatory motive or by showing that the employer's reasons were pretextual. See Conner, 121 F.3d at 1396-97 [*27] Temporal proximity between protected activity and adverse action may combine with additional circumstantial evidence to create a fact issue as to pretext. See Butler, 172 F.3d at 752.

### VIII. PLAINTIFFS SIXTH CAUSE OF ACTION
### BREACH OF CONTRACT

41. Paragraphs 1 thru 40 are incorporated herein by reference.

42. In August of 1996, Mr. Ostler settled his lawsuit out of Court with the Utah Departments of Public Safety, Commerce, and Corrections. In addition to a sum of cash and a letter of reinstatement, Mr. Ostler was given an assurance in his settlement agreement that the Defendants, while not required to just give him a position, would not interfere with his career plans and professional endeavors.

43. Mr. Ostler alleges that the Defendants have never honored that settlement agreement and have continually interfered with his need to be gainfully employed and have done so by way of conspiracy through the "good ole boy" network of law enforcement.

44. While the basis for these claims are the same basis for claims in a law suit filed in U.S. Court for Utah, they are itemized and asserted herein as a separate cause of action as they constitute the

basis of support for all of the above separate causes of action: i.e., that through communications from individuals within these Utah agencies and departments to individuals within SLCC, Mr. Ostler was terminated and such was not done because he wasn't doing his job or because he wasn't able to "fit in" but because of blacklisting, defamation of character, retaliation, and in violation of the Utah Public Employee Protection Act.

45. Mr. Ostler asserts that through the process of discovery he will be able to produce evidence of these claims and will provide adequate proof that the terms of his settlement agreement, a lawful and enforceable contract, have not been abided by and that Mr. Ostler has sustained nearly a decade of damages from the on-going and egregious actions of the Defendants.

## IX. PLAINTIFF'S SEVENTH CAUSE OF ACTION
## INTERFERENCE WITH PROSPECTIVE EMPLOYMENT

46. Paragraphs 1. thru 45. are incorporated herein by reference.

47. Albeit a public employer enjoys limited immunity from liability under Utah's Employer Reference Act when information concerning the job performance or professional conduct of a former employer is communicated to a prospective employer. However this immunity is only in affect when the information is communicated in good faith and at the request of the prospective employer and is defeated upon clear and convincing evidence that the former employer disclosed the requested information with "actual malice" or with an "intent to mislead."

48. The Courts have been firm in ruling that : "if the communication is negative and is conveyed for the sole purpose of preventing employee form obtaining new employment, the former employer may be haled liable for interference. *Watkins,* 805 F. Supp at 918.

49. Mr. Ostler asserts that each of the Defendants are liable for communicating not only negative information but information that is false and is not found in Mr. Ostler's employee file and is information that does not pertain to his job performance and/or professional credentials and work history. Mr. Ostler asserts that through the process of discovery there will be testimony and

9

documentation the will come forward supporting these claims.

50. Defendants are, therefore, liable for their malicious and intentional acts of interference with Mr. Ostler's prospective employment.

## X. DAMAGES & REPAIRS

51. Paragraphs 1. thru 50. are incorporated herein by reference.

52. The result of Mr. Ostler's short term of employment and termination by SLCC has result in a variety of damages for which he seeks repairs which are to be proven at trial and include but are not limited to the following:

* **Reinstatement.** Mr. Ostler should not have been terminated as he was qualified for the position, was performing the responsibilities and job tasks satisfactorily as outlined in the job description for the position. He therefore request reinstated to the position and salary at which he'd been hired.

* **Compensatory Damages.** Loss of Mr. Ostler's employment has caused him to miss the window of opportunity to network his consulting business and it has suffered. As a consequence, he therefore requests back-pay in full and reimbursement for lost benefits such as retirement, health and casualty insurance, employer deposits made on behalf of employees, and accrual of both sick and holiday days.

* **Punitive Damages.** Mr. Ostler has sustained emotional and mental damages from the willful resurrection of old blacklisting and defamation claims and will, therefore, request double payment of back wages and damages.

* **Attorneys Fees..** Mr. Ostler has filed this claim "pro se" as his experience in finding legal counsel to represent him when he does not have the financial wherewithal to pay a hefty retainer has caused him many hours of dedication to legal research and preparation of forms to pursue his civil rights and, therefore, request reasonable fees to be demonstrated at trial.

## XI. REQUEST FOR JURY HEARING

Consistent with the laws of Utah and the Utah Rules of Civil Procedure, Plaintiff herein request that this matter be heard by a jury of his peers.

DATED this 9th day of July, 2004.

_____
Neal K. Ostler,
Plaintiff,   "pro se"

Exhibits/ Attachments to this document have **not** been scanned.

Please see the case file.